OPINION
{¶ 1} Defendant-appellant, Kirk Kash, appeals his convictions in the Butler County Court of Common Pleas for rape and kidnapping. We affirm the decision of the trial court.
 {¶ 2} In the early morning hours of January 18, 2002, Stephanie Lampe reported an alleged rape to police. Lampe told police officers that appellant forced her to get into his car. She stated that he drove around a parking lot, then forced her to perform oral sex on him. She also told police that appellant digitally penetrated her during the incident. At the time, appellant was a Butler County Sheriff's Deputy and was working an off-duty detail at the Metropolis nightclub in Forest Fair Mall.
 {¶ 3} Appellant was indicted on three counts of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(4). Following a bench trial, appellant was convicted of the kidnapping charge and one count of rape.[1] The trial court sentenced appellant to a prison term of four years on the rape conviction and three years for the kidnapping conviction. Appellant now appeals his convictions and raises three assignments of error for our review.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "The trial court erred to the prejudice of defendant-appellant when it refused to grant a request for a continuance of the trial."
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "Defendant-Appellant's conviction should be reversed and remanded for a new trial because he did not receive effective Assistance of counsel."
 {¶ 8} Assignment of Error No. 3:
 {¶ 9} "The trial court erred to the substantial prejudice of Defendant-Appellant by failing to find reasonable doubt of guilt, as against the manifest weight of the evidence."
 {¶ 10} For ease of discussion regarding the facts of this case, we begin with appellant's third assignment of error. In this assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 11} An appellate court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988), 38 Ohio St.3d 56,59. The standard for reversal for manifest weight of the evidence has been summarized as follows:
 {¶ 12} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 13} Appellant contends that the verdict was against the manifest weight of the evidence because the victim's testimony was not credible. Appellant argues that her version of the events surrounding the alleged rape and kidnapping was inconsistent and differed from the testimony of other witnesses.
 {¶ 14} On direct examination at trial, the victim testified that she went to the Metropolis club with friends late in the evening of January 17. While at the club, she met Mike Pierson for the first time. The two began dancing and went out to a car belonging to a friend of Pierson's because Lampe wanted something to drink and Pierson said that there was beer in the vehicle. Once inside the vehicle, the two began kissing and progressed to sexual intercourse. Lampe testified that she did not perform oral sex on Pierson. According to Lampe, they were engaged in sexual intercourse for less than five minutes before they were interrupted when appellant, who was working security in the parking garage and in his sheriff's uniform, yelled at them to get out of the car. Lampe stated that Pierson pulled up his pants and got out of the vehicle to talk to appellant. While Lampe was getting dressed, Pierson talked to appellant. After appellant was done talking to Pierson, he talked to Lampe, asking her what they were doing in the car.
 {¶ 15} Lampe testified that appellant asked detailed questions regarding what the two were doing in the car and that he was behaving in a "flirty" way, asking too many personal questions. According to Lampe, appellant began yelling at them, saying things like the two of them should not be doing these things with each other and shouldn't be together. Lampe stated that appellant told Pierson to go back to the club and that he would not let Pierson say goodbye to her. According to Lampe, appellant told her to get in his car, and she obeyed because he was a police officer. Lampe started to get in the back of the car, but appellant told her to get in the front.
 {¶ 16} Lampe testified that they drove away in his car to another area of the parking lot. Appellant then asked her, "you know what you can do to get out of this ticket?" According to Lampe, as appellant was asking, he unbuttoned his pants. When she responded that she didn't know what he was talking about, appellant took his hand, put it behind her head, pushed her head into his lap and forced her to perform fellatio. According to Lampe, she complied and appellant began to touch her breasts and inserted his finger in her vagina.
 {¶ 17} Lampe testified that a car came by while this was occurring and appellant told her to crouch down in the seat. When the car passed, he forced her to continue until he ejaculated in her mouth. She stated that appellant then drove her back and dropped her off in the parking garage, telling her "don't you dare tell anyone about this."
 {¶ 18} According to Lampe, she ran up to the club and saw Pierson in front. She ran and held him and told him what happened. The two went into the club to find their friends. According to Lampe, when she found her friends and told them what happened, they told her that she had to talk to the police. They went outside the club and reported the incident to a female police officer. Officers transported Lampe to the hospital, where an examination was performed.
 {¶ 19} Mike Pierson had a somewhat different version of the events of that evening. He testified that he met Lampe at the club while the two were dancing. He stated that the two started to get physical on the dance floor, putting their hands inside each other's pants, until Lampe told Pierson, "let's go fuck." Pierson testified that they went to his friend's car, where Lampe performed oral sex on him, then the two had vaginal sex in different positions. According to Pierson, the two were finished having sex and he was dressed and outside of the car when appellant arrived. He stated that appellant talked to him first, then Lampe.
 {¶ 20} Pierson testified that appellant did not order Lampe to get in his car, but that she asked to sit down and appellant told her she could sit in his vehicle. He stated that appellant ordered him to leave, but said he wasn't done talking with Lampe yet. Pierson asked if he could say goodbye to Lampe, and appellant allowed him to do so. Pierson testified that he gave Lampe a hug and a kiss, and she told him to meet her at the club the next day.
 {¶ 21} Pierson testified that he walked back to the club but was unable to get back in. He stood outside, and about 15 minutes later saw Lampe running up to him. Pierson testified that Lampe was upset and crying, and told him that she had to perform oral sex on the police officer to keep the two of them from getting a ticket. The two went back inside the club, exchanged phone numbers, and Pierson left with his friends.
 {¶ 22} Charlene Wooten, a sexual assault nurse examiner, testified regarding her examination of Lampe at the hospital. She stated that Lampe told her that she had not engaged in consensual sex within the past 72 hours. According to Wooten, Lampe stated that she attempted to have consensual sex that evening, but her partner was unable to get an erection. Wooten testified that Lampe's testimony of engaging in sexual intercourse was inconsistent with what Lampe told her. Wooten stated that her examination revealed redness and tenderness at the back of Lampe's throat.
 {¶ 23} A forensic scientist testified that testing revealed small stains at the bottom of appellant's sheriff's uniform shirt were a mixture of his sperm cells and Lampe's epithelial cells, most likely from her mouth. The forensic scientist also testified that Pierson's DNA was found in sperm cells from swabs of Lampe's vaginal cavity and underwear.
 {¶ 24} Appellant argues that his conviction was against the manifest weight of the evidence because Lampe's testimony regarding her sexual encounter with Pierson was inconsistent with the testimony of Pierson, Wooten and police officers who took her report. Appellant argues that Lampe's testimony was "blatantly not credible," that it "stretches the boundaries of believability," and the average person would dismiss her testimony as unreliable and incredulous.
 {¶ 25} Although a weight-of-the-evidence argument permits a reviewing court to consider the credibility of witnesses, that review must nevertheless be tempered by the principle that weight and credibility questions are primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact's decision is owed deference since the trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 26} The trial court issued a written decision that included findings of fact. The trial court found that Lampe and Pierson met at the club and went out to a car to have sex. The trial court further found that "[t]he details of the sexual escapade are unclear" and that Pierson's version of the events was "remarkably different" from Lampe's. The court also found that her statements to police and to the hospital nurse were different from her court testimony regarding what went on in the car with Pierson. The court found that the inconsistencies affected the court's view of Lampe's ability to accurately recall events and it looked to corroborating evidence to determine if it supported her testimony.
 {¶ 27} The court noted that Lampe was able to describe a cigarette pack which was found in appellant's car, and that her story regarding appellant stopping and forcing her down when another car was coming was corroborated by a witness who testified that he drove past appellant's car in the parking lot. The trial court also found that Lampe's story was corroborated by DNA analysis of stains found on appellant's shirt that contained a mixture of Lampe's DNA and appellant's sperm cells.
 {¶ 28} The trial court also noted that Lampe stated that she was told to get in appellant's car and that she was driven away. The court also noted testimony from witnesses showed that when Lampe returned to the club she was crying and upset and reported the encounter to police, supporting her testimony that the encounter was not voluntary. The trial court also noted evidence that appellant drove by the club while police were questioning Lampe, then drove off, leaving the detail without checking out and before the end of his shift. The trial court found that appellant had an accident in his vehicle shortly after the incident, and called off work the next day, even though he wasn't injured. The court further found that when investigating officers went to appellant's home later that morning, appellant had already washed the underwear he had been wearing. Finally, the court noted that when investigating officers told appellant why they were there, appellant asked if they were going to charge him with rape or sexual battery. The court found the evidence regarding appellant's actions, while circumstantial, was relevant when considered with other evidence.
 {¶ 29} After considering the evidence, we cannot say that the trial court clearly lost its way or that the verdict was a manifest miscarriage of justice. While the varying stories of the surrounding events created a question of Lampe's credibility, this resolution of inconsistencies was a matter for the trial court to resolve. Although there were inconsistencies regarding her contact with Pierson, these inconsistencies did not render her testimony regarding appellant so incredible as to deny belief. The trial court acknowledged these inconsistencies and looked for corroborating evidence to support Lampe's accusations. Furthermore, Lampe's story to police, hospital personnel and at trial regarding her contact with appellant in his car was consistent. Because Lampe's credibility was primarily for the trial court to determine, we find that the verdict was not against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 {¶ 30} In his first assignment of error, appellant contends that the trial court erred in denying his request for a continuance. On July 29, 2002, the morning of trial, appellant's counsel requested a continuance. The request was made because on July 23 the state informed appellant that it planned to use a recent report from a forensic scientist that showed Pierson's sperm DNA was found in swabs taken from Lampe's vagina and underwear.
 {¶ 31} The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of that discretion. State v.Unger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. "Whether the court has abused its discretion depends upon the circumstances, `particularly * * * the reasons presented to the trial judge at the time the request is denied.'" State v.Powell (1990), 49 Ohio St.3d 255, 259, quoting Ungar v.Sarafite (1964), 376 U.S. 575, 589, 84 S.Ct. 841.
 {¶ 32} When ruling on a motion to continue, a trial court should consider: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances which caused the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. Unger,67 Ohio St.2d at 67-68.
 {¶ 33} Appellant argues that the trial court should have granted the motion for a continuance because the state provided new, undisclosed evidence that it planned to use at trial. Appellant's counsel requested more time to explore the issue of whether the DNA evidence could rule out appellant's guilt on the count of digital penetration. When questioned by the trial court, counsel stated that since receiving the report, they had not done any investigation into whether this evidence could be relevant or exculpatory. Appellant's counsel requested the continuance to determine what relevance the evidence could possibly have.
 {¶ 34} The trial court denied the continuance, but gave defense counsel the opportunity to interview the forensic scientist who prepared the report prior to her testimony at trial. Appellant's counsel availed himself of this opportunity, and interviewed the forensic scientist and was able to investigate the facts surrounding the DNA report.
 {¶ 35} Given the facts before us, we find that the trial court did not abuse its discretion in denying appellant's request for a continuance. First, the issue of whether Lampe and Pierson engaged in sex was never debated, nor was there any allegation that appellant engaged in vaginal intercourse with Lampe. In addition, defense counsel was unable to explain any particular need necessitated by the report other than a general desire to investigate. Finally, appellant's counsel was given the opportunity to interview the witness and ask questions regarding the report prior to trial. Under these circumstances, we find no abuse of discretion in denying the motion for a continuance. Appellant's first assignment of error is overruled.
 {¶ 36} In his second assignment of error, appellant contends that his conviction should be reversed because he received ineffective assistance of counsel. To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test of Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that he was prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
 {¶ 37} Appellant alleges his counsel was ineffective for failing to timely investigate the DNA evidence, that counsel appeared confused and with no coherent or legitimate trial strategy, failed to develop a theory of defense, and gave an inadequate closing that failed to address a logical explanation for the DNA evidence.
 {¶ 38} After reviewing the evidence and trial transcript in this case, we find no merit to appellant's broad assertions that he received ineffective assistance of counsel. We find no indication that the result of the trial would have been different if counsel had further investigated the DNA evidence. In addition, a review of the transcript reveals that trial counsel attempted to discredit Lampe and cast doubt on her credibility regarding the events of the evening in question, both in cross-examination and in closing arguments. The manner used to accomplish this was a matter of trial strategy and did not amount to ineffective assistance of counsel. Appellant's second assignment of error is overruled.
 {¶ 39} Judgment affirmed.
Valen, P.J., and Walsh, J., concur.
[1] The trial court found appellant not guilty of rape charge involving digital penetration, and dismissed another rape count finding that two of the counts involved a continuing course of conduct.