[Cite as *State v. Sails*, 2012-Ohio-4453.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                    :

     Plaintiff-Appellee            :         C.A. CASE NO.   24733

v.                               :         T.C. NO.   11CR380

ALLEN SAILS                      :        (Criminal appeal from
                                          Common Pleas Court)

     Defendant-Appellant          :

                                 :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    28th    day of   September  , 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

THOMAS R. SCHIFF, Atty. Reg. No. 0039881, 500 Lincoln Park Blvd., Suite 216, Kettering, Ohio 45429
       Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Allen Sails appeals his conviction and sentence for one

count of felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree, and one count of felonious assault (serious physical harm), in violation of R.C. 2903.11(A)(1), also a felony of the second degree. Three-year mandatory firearm specifications were attached to both counts. Sails filed a timely notice of appeal with this Court on July 18, 2011.

{¶ 2} The incident which forms the basis for the instant appeal occurred on the evening of January 28, 2011, when the victim, Ulyesse S. Jackson, accompanied by two friends, Donny Goode and Antwan Cobb, drove to Daytona Village Apartments in Dayton, Ohio. Jackson testified that he traveled to Daytona Village that day in order to sell marijuana to Sails. Jackson also wanted to collect a portion of Sails' girlfriend's tax refund. Jackson testified that he and Sails had communicated via cell-phone earlier that day and agreed to meet at Daytona Village.

{¶ 3} Upon arriving at the apartment complex, Jackson called Sails and asked him where he was located. Jackson testified that Sails indicated that he was located near the first entrance near the back of the complex. Jackson further testified that he drove to that location and called Sails again to find his exact location. Jackson testified that Sails flashed his vehicle's headlights. Jackson then pulled his vehicle along the side of Sails' vehicle. Jackson testified that he got out of his vehicle and walked over to the front passenger side of Sails' vehicle and opened the door. Jackson testified that Sails pointed a gun at him and stated "give me all what you got, man." Jackson testified that Sails then fired the gun twice, striking him in the face.

{¶ 4} At this point, Jackson testified that he ran away from the apartment complex

until he reached a residence at 2915 Catalpa Drive. Someone at that location called the police and paramedics. Cobb and Goode testified that upon hearing the gunshots and observing Jackson running away, they exited the vehicle and ran away from the apartment complex. Jackson was subsequently transported to the Miami Valley Hospital where he received treatment. Jackson testified that his chin was shattered by the bullet, requiring surgery. Specifically, Jackson testified that he had to have a metal plate and screws inserted into his mouth.

{¶ 5} Before Jackson was taken to the hospital, he spoke with Deputy Brian Shiverdecker regarding the shooting. Deputy Shiverdecker was dispatched to the area where the shooting occurred at 10:20 p.m. on January 28, 2011. After Deputy Shiverdecker arrived at 2915 Catalpa Drive, Jackson informed the deputy that he knew the individual who shot him. Jackson testified that he told Deputy Shiverdecker that the suspect possibly lived in the Olive Hill Apartments. At the hospital, Jackson was questioned by Detective Ronald Thomas of the Montgomery County Sheriff's Office. Det. Thomas testified that Jackson provided the name "Allen" as the individual who shot him. Det. Thomas testified that Jackson did not know the suspect's last name, but that he knew that Allen lived on Calumet Lane which is where the Olive Hill Apartments are located.

{¶ 6} Based on the information that Jackson provided to Deputy Shiverdecker and Det. Thomas, Detective Brad Daugerty composed a photo-spread containing a picture of Sails. Det. Thomas showed the photo-spread to Jackson at Miami Valley Hospital on January 29, 2011, shortly after midnight. Jackson selected photo #3 as the individual who shot him. Jackson also stated that he was "real sure" that he identified the correct

individual.   Photo #3 was a picture of Sails.

{¶ 7}    On February 28, 2011, Sails was indicted by a Montgomery County Grand Jury for two counts of felonious assault.   At his arraignment on March 3, 2011, Sails stood mute, and the trial court entered a plea of not guilty on his behalf.   Sails filed a motion to suppress and a motion to dismiss based on an "unduly suggestive identification."   A hearing was held on Sails' motion to suppress/dismiss on April 29, 2011.   On May 2, 2011, the trial court issued a judgment entry overruling Sails' motion.

{¶ 8}    The matter proceeded to a jury trial which lasted from June 13, 2011, through June 15, 2011.   Sails was ultimately found guilty of both counts in the indictment. On July 6, 2011, the trial court sentenced Sails to an aggregate term of seven years in prison.

{¶ 9}    It is from this judgment that Sails now appeals.

{¶ 10}    Sails' first assignment of error is as follows:

{¶ 11}   "THE EVIDENCE PRESENTED AGAINST MR. SAILS WAS INSUFFICIENT TO SUPPORT HIS CONVICTION FOR FELONIOUS ASSAULT AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 12}    In his first assignment, Sails argues that the evidence adduced at trial was insufficient to sustain a conviction for two counts of felonious assault, in violation of R.C. 2903.11(A)(2) and 2903.11(A)(1).   Additionally, Sails asserts that his convictions for said offenses were against the manifest weight of the evidence.

{¶ 13}   "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315.  "In reviewing a claim of insufficient evidence, '[t]he

relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 14} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 15} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL

691510 (Oct. 24, 1997).

{¶ 16} Initially, we note that although Sails contends that there was insufficient evidence to convict him of felonious assault, the argument in his first assignment almost exclusively focuses on why his conviction was against the manifest weight of the evidence. Specifically, Sails presented an alibi defense at trial wherein he attempted to establish that he did not have any contact with Jackson on the night of January 28, 2011. In fact, Sails adduced evidence through his own testimony and that of his friend, James Millerton, that he was at home playing video games until 10:30 p.m. when he and Millerton left and traveled to Summit Square Apartments to get his cell phone from an individual named Tone. After retrieving his phone, Sails testified that he and Millerton returned home but left shortly thereafter to purchase cigarettes. After buying the cigarettes, Sails testified that he and Millerton went home and finished watching a movie.

{¶ 17} Sails also testified that although he knows Jackson by his nickname, Mario, he did not meet with Jackson on January 28, 2011, at Daytona Village Apartments. Sails testified that he does not even know where Daytona Village is located. Sails further testified that he never spoke to Jackson on the date of the shooting and that he did not even have Jackson's phone number. Most importantly, Sails testified that he did not shoot Jackson.

{¶ 18} A. Sufficiency of the Evidence

{¶ 19} R.C. 2903.11(A)(2), pursuant to which Sails was charged in Count I, provides, "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another *** by means of a deadly weapon *** ." "'Deadly weapon' means any instrument,

device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2903.11(E)(1); R.C. 2923.11(A). R.C. 2923.11(B)(1) defines a firearm as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."

{¶ 20}   Sails was also charged with a violation of R.C. 2903.11(A)(1) in Count II, which provides, "[n]o person shall knowingly * * * (1) cause serious physical harm to another *** ."   "'Serious physical harm to persons' means [in relevant part] *** (c) any physical harm that involves * * * some temporary, substantial incapacity; (d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

{¶ 21}   The evidence adduced at trial established all of the elements necessary to sustains Sails' convictions for felonious assault (deadly weapon) and felonious assault (serious physical harm).   Specifically, Jackson testified that shortly after ten p.m. on January 28, 2011, he met Sails at Daytona Village Apartments.   After locating Sails' vehicle, Jackson testified that he walked over to the car and opened the front passenger door, thereby activating the interior light.   Jackson testified that Sails was armed with a handgun and said "give me all what you got man."   Jackson further testified that he heard two gunshots, one of which struck him in the face.   Jackson testified that he immediately recognized Sails as soon as he opened the door to the vehicle.

{¶ 22}   Jackson also testified at length about the injuries he suffered as a result of

being shot in the face by Sails. Jackson testified that the bullet shattered his chin, requiring surgery. Specifically, Jackson testified that he had to have a metal plate and screws inserted into his mouth. Jackson testified that after the shooting, he was in so much pain that he could not eat or sleep. Lastly, Jackson testified that as a result of the shooting and subsequent surgery, he had to wear a protective mask to keep dust and dirt out of the wound. Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Sails' convictions for felonious assault (deadly weapon) and felonious assault (serious physical harm).

{¶ 23} Sails' convictions are not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve. Although Sails testified on his own behalf and attempted to provide an alibi for his whereabouts on the night of January 28, 2011, it was up to the jury to determine whether his and Millerton's testimony was credible. Nevertheless, the jury did not lose its way simply because it chose to believe the evidence provided by the State's witnesses, including Jackson's own testimony. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 24} Sails' first assignment of error is overruled.

{¶ 25} Sails' second and final assignment of error is as follows:

{¶ 26} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING INTO EVIDENCE JACKSON'S PHOTOGRAPHIC LINEUP IDENTIFICATION OF MR. SAILS."

**{¶ 27}** In his final assignment, Sails argues that the trial court erred when it overruled his motion to suppress because the State failed to demonstrate, with specificity, what, if any, policy existed within the Montgomery County Sheriff's Office (MCSO) regarding the creation and use of photo line-ups. Thus, Sails asserts that the procedure used by the MCSO to obtain his identification was not implemented in accordance with R.C. 2933.83. As a result, Sails argues that his identification should have been suppressed.

**{¶ 28}** In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

**{¶ 29}** Sails does not dispute that the record clearly establishes that Det. Thomas acted as the blind administrator of the photo line-up created separately by Det. Daugherty. Additionally, Sails does not challenge Det. Thomas' status as a blind administrator or the use of a photo line-up in the instant appeal. The sole issue, as stated by Sails, is whether the MCSO complied with R.C. 2933.83(B) insofar as the adoption of specific procedures for both live and photo line-ups.

{¶ 30} This assignment of error implicates R.C. 2933.83(B), which took effect in July 2010. *State v. Stevenson*, 2d Dist. Montgomery No. 24821, 2012-Ohio-3396. The statute "requires any law enforcement agency or criminal justice entity that conducts live lineups and photo lineups to adopt specific procedures for conducting the lineups." *State v. Ruff*, 1st Dist. Hamilton No. C-110250, 2012-Ohio-1910, ¶5. These procedures include, inter alia, using "a blind or blinded administrator" to conduct a physical live line-up or a photo lineup. R.C. 2933.83(B)(1). Under R.C. 2933.83(C)(1), evidence of a failure to comply with the required protocol "shall be considered by trial courts in adjudicating motions to suppress eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(1), however, does not provide an independent basis upon which to suppress evidence, and a trial court errs in solely relying on the statute in suppressing an identification. *Id*.

{¶ 31} The failure of the State at the suppression hearing to present detailed testimony regarding the identification procedures adopted by the police when a live line-up or photo line-up is conducted does not result necessarily in suppression of the identification. Rather, the "penalty" for failure to comply with R.C. 2933.83 is that "the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification." *Stevenson*, 2012-Ohio-3396; R.C. 2933.83(C)(3).

{¶ 32} In the instant case, the jury was instructed at length regarding the requirements of R.C. 2933.83 in relation to the use and implementation of photo line-ups. After a complete recitation of the statutory language including the adoption of specific

procedures, the jury was instructed as follows:

> The Court: In determining the reliability of the
> eyewitness identification in this case, you, the
> jury, may consider credible evidence of non-
> compliance with any of the above provisions
> set forth in Section 2933.83.

{¶ 33} Accordingly, even if the State did not adduce sufficient evidence of the MCSO's internal policies or that there was compliance with R.C. 2933.83 regarding the photo line-up in which Jackson positively identified Sails as the perpetrator, the jury was properly instructed that it could consider credible evidence of non-compliance with any of the provisions set forth in Section 2933.83. From this record, we must presume that the jury properly considered the court's instructions regarding the MCSO's compliance with R.C. 2933.83 and how that affected Jackson's identification of Sails from the photo line-up. We note, however, that both Det. Daugherty and Det. Thomas provided ample testimony regarding the procedures they followed when they presented the photo line-up to Jackson, such as the use of a blind administrator as required by R.C. 2933.83.

{¶ 34} Sails' second and final assignment of error is overruled.

{¶ 35} All of Sails' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Michele D. Phipps
Thomas R. Schiff
Hon. Dennis J. Langer