[Cite as *State v. Roark*, 2013-Ohio-217.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-04-036 |
| - vs - | : | O P I N I O N<br>1/28/2013 |
| | : | |
| RODNEY ROARK, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CR27859

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Stephan D. Madden, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Rodney Roark, appeals his conviction and sentence in the Warren County Court of Common Pleas for sexual battery and rape. For the reasons discussed below, we affirm the decision of the trial court.

{¶ 2} On November 11, 2011, appellant was indicted on three counts of rape in violation of R.C. 2907.02(A)(2), five counts of sexual battery in violation of R.C.

2907.03(A)(5), and two counts of importuning in violation of R.C. 2907.07(B). The charges stemmed from an ongoing series of sexual improprieties by appellant with his daughter, B.R., from June 2001 through September 2005.

{¶ 3} Counts 1 and 4 of the indictment alleged that appellant engaged in importuning from June 2001 to September 2001, and September 2001 to March 2002. Counts 2 and 3 alleged sexual battery and rape, respectively, from September 2001 to December 2001. Counts 5 and 6 alleged sexual battery and rape, respectively, from September 2001 to March 2002. Count 7 alleged sexual battery from January 2002 to December 2002. Count 8 alleged sexual battery from January 2004 to December 2004. Lastly, Counts 9 and 10 alleged sexual battery and rape, respectively, from June 2005 to September 2005.

{¶ 4} Appellant was tried before a jury. During trial, B.R. testified that in 2001, when she was 13 years old, appellant began sexually molesting her at their home in Warren County, Ohio. B.R. testified that one day during the summer of 2001, appellant told B.R. to go into his bedroom, where he played a pornographic movie and asked to see B.R.'s breasts. When B.R. lifted up her shirt, appellant touched her breasts. Appellant then pulled down his pants, exposed himself, and told B.R. to look at his penis. When B.R. refused to look, appellant pulled up his pants, hugged B.R., and allowed her to exit the bedroom.

{¶ 5} B.R. testified that several days later, appellant called B.R. into his bedroom, where he was lying on his bed underneath a blanket. When B.R. entered the room, appellant uncovered himself. Appellant was naked with an erection and asked B.R. to touch his penis, but she refused. Appellant then took B.R.'s hand and placed it on his penis, but B.R. quickly removed her hand. At that point, appellant ordered B.R. to place her mouth on his penis. When B.R. refused, appellant got "really upset," but allowed B.R. to leave the bedroom.

{¶ 6} In September 2001, appellant started coming into B.R.'s bedroom in the morning while she was preparing for school. B.R. explained that she and her brother were

often in the house alone with appellant in the mornings because their mother would leave early for work. B.R. testified that appellant would sit on her bunk bed and order her to perform oral sex on him. B.R. explained that appellant would either pull her over to the bed or would take her head and move it onto his penis. B.R. testified that after she would perform oral sex, appellant would ejaculate into a towel or a paper towel, and that this pattern continued "a couple times a week" for "[a] couple of months."

{¶ 7} Several months later, appellant came into B.R.'s bedroom in the middle of the night and demanded oral sex, but B.R. refused. Appellant then exited the bedroom and returned to the living room sofa, where he usually slept. However, appellant quickly returned and demanded oral sex again. After B.R. refused for a second time, appellant asked her if she had ever experienced cunnilingus, and she replied that she had not. Appellant then pulled B.R.'s pants down and licked her vagina. Afterwards, appellant climbed on top of B.R. in bed, grabbed her arms, and told her that he was "going to show [her] what it was like to really have sex." B.R. testified that she was backed up against the wall and that there was no room in her bed for her to escape. At that point, appellant inserted his penis into B.R.'s vagina and B.R. began to cry. B.R. also testified that appellant "would have vaginal intercourse with [her] unless [she] was on [her] period and then he would make [her] give him oral sex." B.R. explained that this behavior continued to occur two to three times per week.

{¶ 8} Next, B.R. testified that in 2002, when she was approximately 14 years old, appellant brought up the topic of masturbation with her. She also stated that appellant began giving her money without her mother's knowledge, and that he continued to have vaginal intercourse with her during that time.

{¶ 9} B.R. also stated that in 2004, when she was 16 years old, appellant threatened to take away her online computer games if she did not continue to have sex with him. B.R. stated that she had no choice but to continue to have sex with appellant, since her computer

games were very important to her. B.R. also explained that if she resisted having sex with appellant during that time, he would "smack" her on the back of her head.

{¶ 10} B.R. then recalled a particular day in the summer of 2005, before she turned 17, when appellant told her brother to go outside and mow the yard. While B.R.'s brother was outside, appellant took B.R. into her room, removed her pants, and had sex with her. B.R. testified that although she did not resist that day, appellant had vaginal intercourse with her whether she resisted or not, and continued to do so until shortly before her eighteenth birthday.

{¶ 11} After B.R. testified, the state called B.R.'s mother to the stand. Mother corroborated B.R.'s testimony that between 2001 and 2005, they lived in a home in Warren County, Ohio. Mother also testified that she and appellant had opposite work schedules, and admitted that there were pornographic movies in their bedroom. Mother also stated that she did not tell B.R. to make any allegations against appellant.

{¶ 12} Next, Detective Jim Englehardt with the Warren County Sheriff's Office testified that he had investigated B.R.'s allegations against appellant, and that during an interview, B.R. told him that appellant had subjected her to "ongoing sexual abuse starting from when she was 13 years of age up until when she was 18 years of age."

{¶ 13} At the close of the state's case, the defense moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court granted the motion with respect to the two importuning charges, but denied the motion as to the three rape charges and five sexual battery charges.

{¶ 14} The jury subsequently found appellant guilty of the remaining charges. On each of the three rape charges, the trial court sentenced appellant to serve five years in prison, to be served consecutively to each other. For each of the five sexual battery charges, the court sentenced appellant to one year in prison, to be served consecutively to each other

- 4 -

and to the prison terms for the rape charges, for an aggregate prison sentence of 20 years.

{¶ 15} Appellant timely appeals, raising three assignments of error for review.

{¶ 16} Assignment of Error No. 1:

{¶ 17} DEFENDANT-APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO MERGE THE RAPE CONVICTIONS WITH THE SEXUAL BATTERY CONVICTIONS.

{¶ 18} Appellant first argues that the trial court erred by failing to merge his convictions for rape and sexual battery because they are allied offenses of similar import.

{¶ 19} Appellant contends that his conduct for Count 2 (sexual battery) and his conduct for Count 3 (rape) each occurred in 2001, when he forced B.R. to perform oral sex in her bedroom. Appellant also claims that the sexual battery charge in Count 5 should merge with the rape charge in Count 6, because both occurred when "he entered B.R.'s bedroom, removed her underwear, forced her down on the bunk bed and had vaginal intercourse with her." Lastly, appellant believes that the sexual battery charge in Count 9 should merge with the rape charge in Count 10, because both occurred while B.R.'s brother was mowing the lawn in 2005.

{¶ 20} Initially we note that appellant's trial counsel did not argue in the proceedings below that the rape and sexual battery convictions should merge. Appellant has therefore forfeited all but plain error on appeal. Crim.R. 52(B); *State v. Mansour*, 12th Dist. No. CA2010-08-198, 2011-Ohio-4339, ¶ 8. Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights or influenced the outcome of the proceedings. *Id.*, citing *State v. Blanda*, 12th Dist. No. CA2010-03-050, 2011-Ohio-411, ¶ 20. The Supreme Court of Ohio has held that imposition of multiple sentences for allied offenses of similar import amounts to plain error under Crim.R. 52(B). *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31; *Blanda* at ¶ 20.

{¶ 21} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court established the proper analysis for determining whether offenses qualify as allied offenses subject to merger pursuant to R.C. 2941.25. First, the court must determine "whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id.* at ¶ 48. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50.

{¶ 22} Here, appellant was convicted of three counts of forcible rape under R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 23} Appellant was also convicted of five counts of sexual battery in violation of R.C. 2907.03(A)(5), which provides,

> No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>
> * * *
>
> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

{¶ 24} R.C. 2907.01(A)(1) defines "sexual conduct" as,

> [V]aginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 25} First, we agree with appellant that it is possible to commit rape under R.C. 2907.02(A)(2) and sexual battery under R.C. 2907.03(A)(5) with the same conduct. Thus, the first step of *Johnson* is satisfied.

{¶ 26} We therefore proceed to the second step of *Johnson*, which requires us to determine whether appellant's rape and sexual battery offenses were committed by the same conduct, *i.e.*, "a single act, committed with a single state of mind." *Johnson*, 2010-Ohio-6314 at ¶ 49. Upon review, we find that appellant engaged in separate instances of sexual conduct over the course of four years, and therefore his convictions for rape and sexual battery were not allied offenses of similar import.

{¶ 27} As to Counts 2 and 3, the record demonstrates that between September 2001 and December 2001, appellant, who is B.R.'s biological father, performed cunnilingus on B.R., *i.e.*, sexual battery, and also engaged in a pattern of forcible fellatio, *i.e.*, rape. As to Counts 5 and 6, the record shows that from September 2001 to March 2002, appellant subjected B.R. to an ongoing pattern of vaginal intercourse constituting sexual battery, as well as a pattern of forcible fellatio and vaginal intercourse constituting rape. As to Counts 9 and 10, the evidence demonstrates that in 2005, appellant had vaginal intercourse with B.R. while her brother mowed the yard, *i.e.*, sexual battery, and that appellant had forcible vaginal intercourse with her until she was almost 18 years old, *i.e.*, rape.

{¶ 28} From this, it is clear that the conduct that constituted the sexual battery offenses can be differentiated from the conduct constituting the rape offenses. In other words, appellant's convictions for sexual battery and rape were not based on a single act, committed with a single state of mind. *Johnson*, 2010-Ohio-6314 at ¶ 49. *See also State v. Hale*, 2nd Dist. No. 11CA0033, 2012-Ohio-2662, ¶ 23 (the fact that gross sexual imposition and sexual battery "were committed within the same span of time, or even on the same date" was not conclusive of whether defendant committed the offenses by the same conduct). As

such, appellant's convictions for rape under R.C. 2907.02(A)(2) and sexual battery under R.C. 2907.03(A)(5) were not allied offenses of similar import, and the trial court's failure to merge them did not amount to plain error. *See State v. Nicholas*, 66 Ohio St.3d 431 (1993).

{¶ 29} Appellant's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT INTERFERED WITH AND QUESTIONED THE STATE'S KEY WITNESS.

{¶ 32} Appellant next argues that the trial court improperly questioned a state witness, thereby prejudicing his rights and depriving him of due process and a fair trial. This argument lacks merit.

{¶ 33} "Evid.R. 614(B) permits a trial judge to interrogate a witness as long as the questions are relevant and do not suggest a bias for one side or the other." *State v. Vanloan*, 12th Dist. No. CA2008-10-259, 2009-Ohio-4461, ¶ 6, quoting *State v. Blankenship*, 102 Ohio App.3d 534, 548 (12th Dist.1995). Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth. *State v. Baston*, 85 Ohio St.3d 418, 426 (1999). Additionally, "[a] trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant." *Vanloan* at ¶ 7, quoting *Blankenship* at 559.

{¶ 34} However, the Ohio Supreme Court has cautioned that in a jury trial, "the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 119 (1970). Where

the jury might infer the court's opinion of a witness through the persistence, tenor, range or intensity of its questions, the court's interrogation is prejudicially erroneous. *Id.* at paragraph four of the syllabus. A trial court's questioning of a witness pursuant to Evid.R. 614(B) is subject to review on appeal under an abuse of discretion standard. *Vanloan*, 2009-Ohio-4461 at ¶ 8. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Id.*

{¶ 35} The exchange of which appellant complains concerns the trial court's questioning of B.R. regarding the definitions of "vaginal intercourse" and "oral sex." The questioning occurred at the end of the state's direct examination of B.R.:

> THE COURT: Let me just ask, [B.R.], we'll take a break after my questions and we'll complete cross but I just have a couple of questions just to clarify. You made mention several times in the course of your testimony to vaginal intercourse. Did you mean the same conduct each time you referred to that particular phrase[?]
>
> [B.R.]: Yes.
>
> THE COURT: Okay, and what did you mean by vaginal intercourse? Sorry that this embarrasses you but can you tell us what you mean by that?
>
> [B.R.]: He put his penis in my vagina.
>
> THE COURT: You also made mention several times of oral sex. Would it be the same conduct each time you referred to oral sex?
>
> [B.R.]: Yes.
>
> THE COURT: Was that conduct?
>
> [B.R.]: That he put my mouth on his penis.

{¶ 36} Appellant argues that the trial court's questioning enhanced B.R.'s credibility and indicated bias, where the court essentially established the material elements of rape and sexual battery for the state. Appellant claims that prejudice ensued, where, but for the court's

questioning, the state would not have been able to establish a prima facie case against him.

{¶ 37} Upon review, we find that the court's questions, while not the most prudent of inquiries, did not go beyond the parameters of Evid.R. 614(B). First, the tenor and nature of the court's questions did not indicate that it was expressing an opinion as to the evidence or to B.R.'s credibility. Rather, they were an attempt to clarify B.R.'s previous testimony regarding the meanings of "vaginal intercourse" and "oral sex," as well as an attempt to verify that B.R. was referring to the same type of conduct each time she used those terms. Moreover, we do not believe that the court was prodding B.R., because it did not proffer the definitions to her, but instead asked her to repeat her own definitions. Lastly, we do not see any prejudice stemming from the court's questions, where the state had already asked analogous questions, and B.R. had already described appellant's acts that constituted both vaginal intercourse and oral sex.

{¶ 38} Finally, we note that in reading the jury instructions aloud to the jury, the court stated,

> It is your duty to carefully weigh the evidence, to decide all disputed questions of fact, to apply the instructions of the court to your findings and to render your verdicts accordingly. * * * Consider all the evidence and make your findings with intelligence and impartially and without bias, sympathy or prejudice so that the State of Ohio and the defendant, Rodney Roark, will feel that their case was fairly and impartially tried. *If, during the course of the trial, the court said or did anything that you consider an indication of the court's view on the facts you are instructed to disregard it.*

(Emphasis added.)

{¶ 39} Based on this instruction, the jury was to disregard anything that may have indicated the court's views during trial, and we must presume that the jury followed this instruction. *See Vanloan,* 2009-Ohio-4461 at ¶ 25-27.

{¶ 40} Because appellant has failed to demonstrate that the trial court's questions to

B.R. were made in a biased or partial manner, or that they had a prejudicial effect on the outcome of the trial, we find no abuse of discretion on the part of the trial court.[1]

{¶ 41} Appellant's second assignment of error is therefore overruled.

{¶ 42} Assignment of Error No. 3:

{¶ 43} APPELLANT'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 44} In his third and final assignment of error, appellant claims that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 45} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Alkire*, 12th Dist. No. CA2008-09-023, 2009-Ohio-2813, ¶ 51. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 46} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Alkire*,

---

1. Although we find no abuse of discretion in the court's inquiry, we acknowledge appellant's concerns and encourage the court to make every effort in the future to avoid toeing the line between "helpful clarification [and] unwarranted intervention * * *." *Baston*, 85 Ohio St.3d at 426. Here, B.R. had already consistently used the phrases "vaginal intercourse" and "oral sex" in context, thus, at first glance and without additional scrutiny, the court's attempts at clarification might have appeared redundant and somewhat unwarranted. However, because no prejudice ensued, we decline to reverse the trial court's decision in this matter.

2009-Ohio-2813 at ¶ 52.

**{¶ 47}** "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *Id.* at ¶ 43, quoting *State v. Wilson*, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Wilson* at ¶ 35.

**{¶ 48}** Here, appellant claims that the state did not elicit testimony of the specific definitions of "vaginal intercourse and "oral sex," and therefore his convictions must be reversed on manifest weight and sufficiency grounds. This argument lacks merit.

**{¶ 49}** The Ohio Supreme Court has held that "in order to sustain a conviction on rape charges predicated on either vaginal or anal intercourse, the state is required to establish beyond a reasonable doubt that the accused and the victim actually engaged in vaginal or anal intercourse." *State v. Ferguson*, 5 Ohio St.3d 160, 167 (1983). The Court continued, stating, "[u]nder R.C. 2907.01(A), the state may establish vaginal or anal intercourse by proving the slightest degree of penetration." *Id.*

**{¶ 50}** Here, in response to the state's questioning, B.R. clearly testified as to penetration. Specifically, she testified that appellant cornered her in her bed, "got up on top of [her] and * * * inserted his penis into [her] vagina." *See State v. Bell*, 12th Dist. No. CA99-07-122, 2001 WL 432737, * 8 (Apr. 30, 2001) ("vaginal intercourse" occurs "when the penis is inserted into the vagina"). Thus, we find that the state proved that "vaginal intercourse" occurred beyond a reasonable doubt.[2]

---

2. Appellant does not argue that the state failed to prove the remaining element of rape under R.C. 2907.02(A)(2), namely, force or threat of force. That said, we find that the state provided ample evidence of force. In one instance, appellant grabbed B.R.'s arms, cornered her in her bed, and forced her to engage in vaginal intercourse. B.R. also testified that appellant would sometimes smack her on the back of her head if she resisted having sex with him. B.R. further indicated that appellant had threatened to take away her computer games if she did not have sex with him, and that he gave her money without her mother's knowledge. While B.R. did not know "exactly" what the money was for, the jury could reasonably have inferred that the money,

{¶ 51} B.R. also testified to the meaning of "oral sex," explaining that in the mornings before school, appellant would "take [her] head and move it into his penis," and that afterwards, appellant would ejaculate into a towel. While the Ohio Revised Code does not provide a statutory definition for "oral sex," Ohio courts have generally held that "if a term is one of common usage and is actually used in that sense, then the failure to define the term does not mandate a reversal." *State v. Walburg*, 10th Dist. Nos. 11AP-716, 11AP-766, 2011-Ohio-4762, ¶ 16. *See also* R.C. 1.42. Moreover courts "presume that the jury can understand phrases expressed in plain English or that the jury will inquire as to the meaning of the phrase." *Id.* Here, appellant does not claim that the phrase "oral sex" lacks a common meaning. Upon review, we find that the common meaning of the phrase, together with B.R.'s explanation of appellant's conduct constituting oral sex, provided sufficient evidence from which the jury could reasonably conclude that there had been fellatio, which constitutes sexual conduct as defined by R.C. 2907.01(A). *See State v. Cullers*, 2nd Dist. No. 18602, 2001 WL 1388506, * 4 (Nov. 9, 2001); *State v. Scott*, 12th Dist. No. CA2011-02-003, 2011-Ohio-6534, ¶ 25-39. *See also In re M.D.*, 38 Ohio St.3d 149, 152 (1988), quoting *Webster's Third New International Dictionary* 836 (1986) (defining "fellatio" as "the practice of obtaining sexual satisfaction by oral stimulation of the penis"); *See also State v. Long*, 64 Ohio App.3d 615, 618 (9th Dist.1989) (no penetration is required to prove fellatio).

{¶ 52} Additionally, the trial court instructed the jury that "sexual conduct" included "vaginal intercourse or fellatio between persons, regardless of sex, and without privilege to do so, the insertion, however slight, of any part of the body into the vaginal or oral cavity of another." The court then stated that vaginal intercourse meant "penetration of the penis into

---

much like the computer games, was offered to coerce her to engage in sexual conduct and to keep quiet about it. Accordingly, we find that the state proved that sexual conduct was committed by force or the threat of force with respect to the rape offenses. *See State v. Fowler*, 27 Ohio App.3d 149 (8th Dist.1985).

the vagina," and that fellatio meant "a sexual act with a penis and the mouth." We presume that the jury followed these instructions and made the requisite findings for its verdict, including the findings that appellant engaged in vaginal intercourse and oral sex, or "fellatio," with B.R. on the dates set forth in the indictment. *See State v. Twyford*, 94 Ohio St.3d 340, 356 (2002); R.C. 2907.01(A).

{¶ 53} We further note that B.R.'s testimony was buttressed by the testimony of Officer Englehardt, who interviewed B.R. and discovered that appellant had engaged in "ongoing sexual abuse starting from when she was 13 years of age up until when she was 18 years of age." In addition, B.R.'s mother corroborated B.R.'s testimony as to appellant's work schedule, which facilitated appellant being alone with B.R. in the mornings. Mother also testified that appellant would often sleep on the couch, rather than their bedroom, which corroborated B.R.'s testimony that appellant typically slept on the couch and came into her room one night, asked for oral sex, and had vaginal intercourse with her. Mother also testified that she did not tell B.R. to make these allegations, and there was no evidence that B.R. had any other motive to lie about appellant's conduct.

{¶ 54} This testimony, coupled with B.R.'s testimony as outlined in our discussion of Assignment of Error No. 2, leads to the conclusion that there was competent, credible testimony that the jury could have reasonably relied upon to determine that appellant used force or the threat of force to compel B.R. to engage in sexual conduct with him in violation of R.C. 2907.02(A)(2). We also find competent, credible testimony to support the jury's findings that appellant engaged in sexual conduct with B.R. and that he was her natural father, thereby violating R.C. 2907.03(A)(5). Thus, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice as to warrant a reversal of appellant's convictions. As such, appellant's convictions were not against the manifest weight of the evidence and were, consequently, supported by sufficient evidence.

{¶ 55} Appellant's third assignment of error is overruled.

{¶ 56} Judgment affirmed.

BRESSLER, J., concurs.

PIPER, J., concurs separately.

**PIPER, J., concurring separately.**

{¶ 57} I concur with the majority opinion, but write separately because I do not share the majority's expressed concerns regarding the trial court's limited questioning of a witness after direct examination. The trial court's very limited questions for the purposes of clarification were entirely proper and appropriate.

{¶ 58} In reading the limited exchange conducted by the trial court "just to clarify," it is clear that the trial court was merely eliciting testimony to ensure the accuracy of what the witness was alleging. In litigation the judge and jury must make tremendously significant decisions and ensuring that the testimony has been given accurately and correctly understood is an important function of the court. Because I see the trial court's brief questions as the opposite of an "unwarranted intervention," I express my own views on the subject. Furthermore, it should be noted that both parties had an opportunity to subsequently address the witness with additional, or follow up, questions. Nothing the trial court did even remotely ran afoul of Evid.R. 614(B). The trial court's questions were entirely reasonable under the circumstances, and unbiased, thus appellant's assignment of error in this regard must fail.

Bressler, J., retired, of the Twelfth Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.