[Cite as *State v. Pence*, 2013-Ohio-1388.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                          :

    Plaintiff-Appellee,              :          CASE NO.   CA2012-05-045

                                  :          O P I N I O N
  - vs -                                                                                                  4/8/2013

                                    :

BOBBY J. PENCE,                          :

    Defendant-Appellant.           :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CR27889


David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Craig A. Newburger, 477 Forest Edge Drive, South Lebanon, Ohio 45065, for defendant-appellant


**RINGLAND, P.J.**

{¶ 1}  Defendant-appellant, Bobby Pence, appeals his conviction in the Warren County Court of Common Pleas for gross sexual imposition.

{¶ 2}  On September 19, 2011, appellant was indicted on three counts of gross sexual imposition, each a third-degree felony in violation of R.C. 2907.05(A)(4).  The charges stemmed from allegations that appellant had sexual contact with his ten-year-old

stepdaughter, E.S.

{¶ 3}  Appellant's case proceeded to a jury trial.  At the close of the state's case, the defense moved for acquittal pursuant to Crim.R. 29.  The trial court granted the motion with respect to Counts Two and Three of the indictment, but denied the motion as to Count One. Appellant was subsequently convicted of Count One of the indictment.

{¶ 4}  Prior to sentencing, appellant moved for a new trial, arguing that the prosecutor had engaged in misconduct when she elicited improper testimony regarding appellant's constitutional right against self-incrimination.  The trial court overruled appellant's motion and imposed a six-month jail sentence and five years of mandatory community control.

{¶ 5}  Appellant timely appeals, raising four assignments of error.

{¶ 6}  Assignment of Error No. 1

{¶ 7}  THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT PROTECTING HIS FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION AND NOT GRANTING APPELLANT'S RELATED MOTION FOR A NEW TRIAL.

{¶ 8}  Appellant first claims that the state's use of his pre-arrest, pre-*Miranda* silence during its case-in-chief violated his Fifth Amendment right against self-incrimination.

{¶ 9}  The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  *State v. Haddix*, 12th Dist. No. CA2011-07-075, 2012-Ohio-2687, ¶ 20.  After the United States Supreme Court's landmark decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), jurisprudence began to focus on the distinction between pre-arrest and post-arrest silence, because some circumstances inherent in pre-arrest silence do not implicate one's Fifth Amendment rights.  *Haddix* at ¶ 20.

{¶ 10} In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, the Ohio Supreme Court held that the "use of a defendant's pre-arrest silence as substantive evidence of guilt

- 2 -

violates the Fifth Amendment privilege against self-incrimination." *Id.* at ¶ 38. In *Leach*, two women called the police and accused the defendant of attempted rape and other crimes. *Id.* at ¶ 3. During the state's case-in-chief, the police investigator testified that one of the victims had provided him with the defendant's phone number. *Id.* at ¶ 5. The investigator called the defendant and made an appointment to talk with him the next day. *Id.* at ¶ 5. The investigator testified that the defendant did not keep the appointment, and that the defendant had left a message on the police answering machine that he wanted to speak with an attorney before talking with the police. *Id.*

{¶ 11} In finding that the state violated the defendant's Fifth Amendment rights, the court in *Leach* explained:

> The state in this case presented testimony that Leach, who had not yet been arrested or Mirandized, remained silent and/or asserted his right to counsel in the face of questioning by law enforcement. This testimony was clearly meant to allow the jury to infer Leach's guilt. Otherwise, jurors might reason, Leach would have offered his version of events to law enforcement.

*Id.* at ¶ 25.

{¶ 12} The court further stated that the "[u]se of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." *Id.* at ¶ 31. *Leach* ultimately concluded that "[b]ecause the evidence of guilt was not overwhelming in this case, the admission of defendant's pre-arrest, pre-*Miranda* silence was clearly prejudicial." *Id.* at ¶ 38.

{¶ 13} However, prior to finishing its analysis, *Leach* distinguished the use of pre-arrest, pre-*Miranda* silence in the state's case-in-chief from using pre-arrest, pre-*Miranda* silence to impeach. The court found that the latter is allowed, because impeachment necessarily means that the defendant has elected to set aside his constitutional right to

silence and testify. The court explained that the use of pre-arrest silence as impeachment evidence "is permitted because it furthers the truth-seeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record." *Id.* at ¶ 33.

{¶ 14} Using the framework of *Leach*, we will now review the state's use of appellant's pre-arrest, pre-*Miranda* silence. During the state's case-in-chief, the prosecutor asked the lead investigator in the case, Detective Josh Holbrook, the following questions:

> [THE STATE]: And did you do anything else in regard to any type of investigation in this case?
>
> [DETECTIVE HOLBROOK]: At that point I believe the same day, [August] 23rd, I attempted to make contact with [appellant].
>
> [THE STATE]: Okay. Did you, in fact, make contact with [appellant]?
>
> [DETECTIVE HOLBROOK]: No, I left a voicemail and a short time later I received, I believe, a phone call from his attorney.
>
> [THE STATE]: Okay. And the reason why you were contacting [appellant] was for what purpose?
>
> [DETECTIVE HOLBROOK]: Just to get his side of the story.
>
> [THE STATE]: Were you ever able to obtain that?
>
> [DETECTIVE HOLBROOK]: No, I was not.

{¶ 15} While not disputing the rule established in *Leach*, the state argues that appellant's case is distinguishable. The state asserts that Detective Holbrook's testimony was permissible as evidence of the "course of the investigation."

{¶ 16} In *Leach*, the court held that, in limited circumstances, testimony of pre-arrest silence is appropriate if it is introduced as evidence of the "course of the investigation." *Leach*, 2004-Ohio-2147 at ¶ 32. *Leach* found that, while it was improper to admit the investigator's direct testimony regarding the defendant's decision to exercise his right to

silence through the invocation of counsel over the telephone, his testimony regarding the defendant's failure to keep his scheduled appointment with the police was "legitimate." *Id.*

{¶ 17} Here, Detective Holbrook's testimony regarding his phone call to appellant and appellant's failure to return the call may have been a "legitimate" response to the state's questions about the investigation. However, we do not view the detective's testimony starting with the return phone call from appellant's attorney the same way. Instead, we view this testimony as the state's use of appellant's pre-arrest, pre-*Miranda* silence as substantive evidence of appellant's guilt in violation of his Fifth Amendment privilege against self-incrimination. *See id.* at ¶ 25. Here, at least implicitly, appellant invoked his Fifth Amendment right to silence when he had his attorney contact the police on his behalf. Although the state claims that it did not use this testimony as substantive evidence of appellant's guilt, we conclude that it could imply nothing else, i.e., "that innocent people speak to police to clear up misunderstandings, while guilty people consult with their attorneys." *Id.* at ¶ 32.

{¶ 18} The remaining issue is whether the Fifth Amendment violation requires reversal of appellant's conviction. We conclude that it does not. First, appellant did not object to this line of questioning, therefore we will review the challenge for plain error only. *State v. Lloyd*, 12th Dist. Nos. CA2007-04-052, CA2007-04-053, 2008-Ohio-3383, ¶ 13, citing *State v. Wayne*, 12th Dist. No. CA2006-06-128, 2007-Ohio-3351. For a reviewing court to find plain error, (1) the court must find error, (2) the error must be plain, that is, it must be an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," that is, the trial court's error must have affected the outcome of the trial. *Lloyd* at ¶ 13, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 16. Courts are to notice plain error "with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). *See also* Crim.R.

52(B).

{¶ 19} Regarding a criminal defendant's constitutional rights, the improper admission of evidence "is harmless 'beyond a reasonable doubt' if the remaining evidence alone comprises 'overwhelming' proof of [a] defendant's guilt." *Wayne*, 2007-Ohio-3351 at ¶ 28, quoting *State v. Williams*, 6 Ohio St.3d 281, 290 (1983). Such an error must be reviewed in the context of other evidence presented in order to determine the effect, if any, that it had on the trial. *Wayne* at ¶ 28.

{¶ 20} Initially, we note that in *Leach*, the court found that the defendant was prejudiced by the state's use of his pre-arrest, pre-*Miranda* silence during its case-in-chief partly because the state's case "contained no physical evidence and rested solely on the credibility of the state's witnesses." *Leach*, 2004-Ohio-2147 at ¶ 29. The court explained that, because the evidence of guilt was not "overwhelming," the admission of the defendant's pre-arrest, pre-*Miranda* silence was "clearly prejudicial." *Id.* at ¶ 38. We concede that, as in *Leach*, the state's case rested solely on its witnesses' credibility. Further, we are aware of at least one other Ohio case, aside from *Leach*, that has found that a sexual assault case resting solely on the credibility of the state's witnesses, without any physical evidence, did not demonstrate "overwhelming" guilt so as to negate the plain error, or prejudicial effect, of the state's references to a defendant's silence. *See State v. Riffle*, 9th Dist. No. 07CA0114-M, 2008-Ohio-4155 (the state's references to defendant's pre-arrest, post-*Miranda* silence during its case-in-chief were "even more egregious than in *Leach*").

{¶ 21} However, we find that this case is distinguishable from *Leach* and *Riffle* in more crucial respects, and therefore the disputed evidentiary admission herein was not inherently prejudicial. First, unlike *Leach* and *Riffle*, appellant testified during trial, which mitigated the potential prejudice to appellant, at least to some extent. During cross-examination, the state asked appellant whether he ever gave a statement to Detective Holbrook, and appellant

responded that he had not. The state also asked appellant whether he contacted E.S.'s father, or anyone else on that side of the family "to tell them that [he] didn't do it," to which appellant responded "[n]o." When appellant took the stand, he "cast aside his cloak of silence," and cross-examination on his pre-arrest, pre-*Miranda* silence "further[ed] the truth-seeking process." *Leach*, 2004-Ohio-2147 at ¶ 22, 33, citing *Jenkins v. Anderson*, 446 U.S. 231, 238, 100 S.Ct. 2124 (1980). Unlike the court in *Leach*, we are not concerned that the state's use of appellant's pre-arrest silence in its case-in-chief forced him to later "surrender [his] right not to testify and take the stand to explain [his] prior silence." *Leach* at ¶ 31. Appellant makes no such claim, and there is no evidence of any such compulsion.

{¶ 22} Additionally, unlike *Leach* and *Riffle*, the state did not attempt to capitalize on, or exploit, appellant's pre-arrest silence throughout its case, and its treatment of appellant's silence was far less egregious than in those cases. *See Wayne*, 2007-Ohio-3351 (no plain error from admission of testimony regarding defendant's post-arrest, pre-*Miranda* silence, where the state made no attempt to capitalize on the testimony, and the improper influence created by the testimony was cured by other evidence). In *Leach* and *Riffle*, the state made three or more references to the defendant's pre-arrest silence. Further, the state did not restrict its comments in either case to its case-in-chief, but also made remarks during its opening statement and/or closing argument. Conversely, here, the state elicited only one reference to appellant's silence in its case-in chief, during the direct examination of Detective Holbrook. Further, as we will discuss later, the improper influence created by Detective Holbrook's testimony was cured by the other evidence in this case, which, if believed, was more than enough to support appellant's guilt.

{¶ 23} Under these circumstances, we find that the admission of Detective Holbrook's reference to appellant's pre-arrest, pre-*Miranda* silence was not inherently prejudicial and did not constitute plain error.

{¶ 24} In closing, we emphasize that our holding is based upon the sum of these factors, and that no one factor is dispositive. Clearly, under *Leach*, the simple fact that a defendant testifies at trial does not automatically negate the prejudice that ensues when the state comments on a defendant's pre-arrest silence during its case-in-chief. We only note that under these particular circumstances, where the state's conduct was not as egregious as in *Leach*, the fact that appellant voluntarily took the stand and addressed his silence, and the existence of other compelling evidence, the prejudice that occurred here did not rise to the level of plain error. *Compare State v. Estepp*, 2d Dist. No. 2006 CA 22, 2007-Ohio-2596 (applying *Leach* to reverse convictions where the testifying officer referred to repeated failed attempts to interview defendant; the court found that the inference of guilt by silence, coupled with lack of overwhelming evidence of guilt amounted to plain error).

{¶ 25} Appellant's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT EXCLUDING TESTIMONY FROM CHILDREN SERVICES WORKERS THAT SERVED A FORENSIC OR INVESTIGATIVE PURPOSE, AND FURTHER ERRED TO THE PREJUDICE OF APPELLANT BY NOT EXCLUDING THE STATE'S CLOSING ARGUMENTS REFERRING TO SAID TESTIMONY.

{¶ 28} Appellant next argues that the trial court erred by admitting testimony from two social workers that served a forensic or investigative purpose. Appellant acknowledges that his trial counsel did not object to this evidence at trial, and thus asserts plain error. *Lloyd*, 2008-Ohio-3383 at ¶ 13.

{¶ 29} During trial, Teresa Wiles, a forensic interviewer with the Child Advocacy Center of Warren County, testified on behalf of the state. Wiles testified that during her interview with E.S., E.S. drew "X" marks on an anatomically correct female drawing to show

where appellant had touched her. E.S. marked areas on the body representing the neck, shoulders, back, legs, and buttocks. Wiles also stated that she had asked E.S. whether appellant had hurt her while touching her. Wiles explained that she asked the question "to determine if at any point [E.S.] might need a medical evaluation."

{¶ 30} Appellant argues that E.S.'s drawings and statements made to Wiles were inadmissible hearsay, and that their admission violated his constitutional rights under the Confrontation Clause.

{¶ 31} At the outset, hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless an exception applies. Evid.R. 802. Evid.R. 803(4) provides an exception to the hearsay rule as follows:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 32} Hearsay statements made to a social worker may be admissible if they are made for purposes of medical diagnosis or treatment. *See State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267.

{¶ 33} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the Ohio Supreme Court recently considered the admissibility of statements given during interviews at child advocacy centers. *Arnold* noted that these types of interviews seek to elicit two types of statements, to wit: statements for the purposes of medical diagnosis and treatment, and forensic statements. *Id.* at ¶ 33. *Arnold* focused on the admissibility of these statements under the Confrontation Clause, rather than Evid.R. 803(4). *Id.*

{¶ 34} *Arnold* held that, to the extent this evidence is obtained to assist police in a "forensic investigation" of abuse, it is "testimonial," and is therefore barred by the

Confrontation Clause. *Id.* at ¶ 36. However, to the extent that the evidence is obtained to medically diagnose and treat a child, the evidence is "nontestimonial" and is not barred from admission at trial. *Id.* at ¶ 41.

{¶ 35} *Arnold* went on to identify which of the child-victim's statements to the interviewer in that case were necessary for medical diagnosis. These included the child's statements regarding the identity of the perpetrator, the type of abuse alleged, the time frame of the alleged abuse, and the identification of the areas where the child had been touched. *Id.* at ¶ 32, 38.

{¶ 36} On the other hand, the court determined that statements such as the child's assertion that the offender shut and locked the door before raping her, the child's description of where others were in the house at the time of the rape, the child's statement that the offender removed her underwear, and the child's description of the offender's boxer shorts, were statements relating primarily to the investigation, and therefore, were prohibited by the Confrontation Clause.

{¶ 37} Initially, we note that we are not presented with a Confrontation Clause issue, because E.S. testified at trial and was subject to cross-examination. *See State v. Rose*, 12th Dist. No. CA2011-11-214, 2012-Ohio-5607, ¶ 47 (noting that when the child-victim was present at trial and subject to cross-examination, the Confrontation Clause presented no constraints on the state's use of the child's prior statements to a SANE nurse examiner). Nevertheless, we find that *Arnold* compels the conclusion that E.S.'s statements to Wiles were for purposes of medical diagnosis and treatment, thus they were admissible under Evid.R. 803(4). This includes the portion of the interview when E.S. used an anatomically correct drawing to identify the areas where appellant touched her. *Arnold*, 2010-Ohio-2742 at ¶ 38; *State v. Edinger*, 10th Dist. No. 05AP-31, 2006-Ohio-1527, ¶ 78 (purpose of social worker's interview was for medical diagnosis or treatment, where the documents prepared

relative to the child-victim's interview included a narrative of the interview, a family tree chart, a medical form, and anatomically correct drawings that the child used to indicate the areas of sexual contact); *State v. Barnes*, 12th Dist. No. CA84-05-041, 1985 WL 8654 (Apr. 8, 1985) (recognizing a doctor's testimony that "anatomically correct dolls are accepted as a valid diagnostic tool within the medical community"). We also find that, consistent with Wiles' testimony, her question as to whether appellant had hurt E.S. when he touched her was asked for the purpose of medical diagnosis or treatment. *See State v. Romo*, 9th Dist. No. 09CA009647, 2010-Ohio-4067, ¶ 18 (child-victim's testimony that appellant had "put his finger inside [her] pee-pee and it hurt" was for the purpose of medical diagnosis or treatment).

{¶ 38} Lastly, we note that even if the admission of Wiles' testimony was error, such error was harmless, as Wiles' testimony regarding the areas that appellant touched E.S. was cumulative to E.S.'s testimony. *State v. Kelley*, 12th Dist. No. CA95-07-073, 1996 WL 31154, * 3 (Jan. 29, 1996) ("[t]he admission of hearsay evidence is harmless error where it is merely cumulative"); *In re Puckett*, 12th Dist. No. CA2000-10-203, 2001 WL 1081359 (Sept. 17, 2001).

{¶ 39} Accordingly, we reject appellant's challenge to the admissibility of E.S.'s statements to Wiles.

{¶ 40} Appellant also challenges the testimony of Tina Pocock, an employee for Children's Protective Services of Clermont County, who interviewed E.S. several days after E.S. disclosed the abuse. Pocock testified that during the interview, E.S. was "quiet," but was able to answer her questions, and that E.S. "responded appropriately." Pocock also testified that after the interview, she spoke with E.S.'s mother, L.S., to obtain any information that E.S. might have told her. The state then asked Pocock: "Anything about what [L.S.] told you that surprised you?" Pocock responded: "No. Pretty much everything that [L.S.] told me

was what [E.S.] had pretty much disclosed."

{¶ 41} Appellant claims that Pocock's testimony constituted inadmissible hearsay under *Arnold.* We find that *Arnold* has no application to Pocock's testimony. *Arnold* prohibits a social worker from testifying at trial as to what the victim *said* during the interview in a forensic context. Here, Pocock did not testify to any statements made by E.S., nor did she relay any details of E.S.'s disclosure to L.S. As such, *Arnold* would not bar Pocock's testimony.

{¶ 42} Appellant also contends that Wiles' and Pocock's testimonies constituted improper bolstering of E.S.'s credibility. Again, we disagree.

{¶ 43} The Ohio Supreme Court has held that, in child sexual abuse cases, an expert may not give his or her opinion as to the child's veracity. *State v. Boston*, 46 Ohio St.3d 108 (1989) (overruled on other grounds). Here, neither Wiles nor Pocock expressed any opinion as to E.S.'s veracity. Neither witness stated that E.S. was telling the truth, or that E.S.'s statements were credible, believable, honest, or accurate. *See State v. Smelcer*, 89 Ohio App.3d 115 (8th Dist.1993). *See also State v. Sibert*, 98 Ohio App.3d 412, 428 (4th Dist.1994) ("[t]estimony that the children exhibit reactions to anatomically correct dolls and various tests which are consistent with allegations of sexual abuse does not amount to improper testimony about the victims' veracity").

{¶ 44} In addition, based on our plain error standard of review, we cannot say that, absent this testimony, the case would have been decided differently. *See State v. Crum*, 5th Dist. No. 97-CA-0134, 1998 WL 818055, * 15 (Oct. 26, 1998). Here, E.S. testified and was subject to cross-examination. The jury was therefore able to witness her demeanor and judge her credibility independent of Wiles' and Pocock's testimonies. *See State v. Cappadonia*, 12th Dist. No. CA2008-11-138, 2010-Ohio-494, ¶ 37.

{¶ 45} Next, Appellant argues that the prosecutor engaged in prosecutorial misconduct

- 12 -

by referring to Wiles' and Pocock's testimonies during her closing argument to bolster E.S.'s credibility. Because appellant failed to object to this claimed instance of prosecutorial misconduct, he has waived all but plain error. *Id.* at ¶ 40; *Lloyd*, 2008-Ohio-3383 at ¶ 13.

{¶ 46} In order to determine whether a prosecutor's remarks constitute misconduct, a court must consider the following: (1) whether the remarks were improper, and, if so, (2) whether the remarks prejudicially affected a defendant's substantial rights. *Cappadonia*, 2010-Ohio-494 at ¶ 41. "To demonstrate prejudice, a defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred." *Id.*, quoting *State v. Jones*, 12th Dist. No. CA2006-11-298, 2008-Ohio-865, ¶ 21. In reviewing allegations of prosecutorial misconduct, it is the duty of this court to consider the conduct complained of in the context of the entire trial. *Cappadonia* at ¶ 41; *State v. Waters*, 12th Dist. No. CA2002-11-266, 2003-Ohio-5871, ¶ 23. The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). The Ohio Supreme Court has held that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). *See also State v. Ghee*, 12th Dist. No. CA2008-08-017, 2009-Ohio-2630, ¶ 42.

{¶ 47} Initially, we observe that the jury was instructed that the statements made during closing arguments were not evidence. We must therefore presume that the jury followed the trial court's instructions. *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶ 85.

{¶ 48} Appellant directs us to the following statements made by the prosecutor during her closing argument:

> We also have to show you that's obviously what happened to
> E.S. * * * [a]nd that's a little something too that I really want to
> touch on because her credibility is what we are talking about. * *

- 13 -

> * [S]he has been consistent when it comes to how he touched her in that master bedroom.  * * * It was the same story that she told her mom.  And we know because when she talked to Tina Pocock, the case worker from Clermont County that's what she told Tina.  And when Tina conferred with the mother, there were no details that were different.  And then little [E.S.] had to go to the Child Advocacy Center and she told the same story to Teresa Wiles.

{¶ 49} Appellant contends that the prosecutor's remarks constituted prejudicial misconduct sufficient for reversal of his conviction.  This argument lacks merit.

{¶ 50} We have previously held that in closing argument, a prosecutor may comment freely on "what the evidence has shown, and what reasonable inferences may be drawn therefrom."  *State v. Paluga*, 12th Dist. No. CA2002-02-041, 2002-Ohio-6876, ¶ 31, quoting *Lott*, 51 Ohio St.3d at 165.  Here, the prosecutor simply summarized the testimony that was offered by Wiles and Pocock during trial.  Accordingly, we find no plain error or prejudice stemming from the prosecutor's statements.

{¶ 51} Appellant's second assignment of error is overruled.

{¶ 52} Assignment of Error No. 3:

{¶ 53} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY NOT GRANTING APPELLANT'S MOTION FOR A NEW TRIAL.

{¶ 54} Appellant next claims that, in light of the trial court's finding that Counts Two and Three of the indictment were not based on sufficiently distinguishable acts, the court erred in allowing the prosecutor to comment during closing argument about multiple acts of sexual misconduct within Count One.  Appellant claims that the trial court committed plain error when it failed to "admonish the [s]tate and provide the jury with a cautionary instruction" in response to the following comments:

> [E.S.] said that I think five times is a lot and I would submit that is probably the understatement of the year for that child, especially for a ten year old.  * * * I'm going to start off with you're going to have one count of gross sexual imposition to decide.  And that's

- 14 -

going to encompass everything that happened in the master bedroom during the time period at the Lebanon house, just one count, and that will encompass all those same acts that happened.

{¶ 60} Upon review, we find that the prosecutor's remarks were within the permissible range of comments on the testimony adduced at trial and the reasonable inferences to be drawn therefrom, and therefore there was no need for a cautionary instruction by the trial court. *Paluga*, 2002-Ohio-6876 at ¶ 31. At trial, E.S. testified that appellant would lay her down on his bed, pull down her underwear, and rub and squeeze her buttocks. At first, E.S. testified that appellant had rubbed her buttocks three times, and that the incidents occurred both in her bedroom and appellant's bedroom. However, E.S. subsequently testified that she did not recall appellant rubbing her buttocks in her bedroom, but that she knew it happened in appellant's bedroom. E.S. also stated that, "every time that [appellant] would take me into his room or something he would usually rub my butt," and that to the best of her knowledge, this occurred "probably about five or six [times] * * *." In light of this testimony, we find that the prosecutor simply commented on, and summarized, E.S.'s statements during trial, and therefore no prejudice occurred during closing argument. As such, the trial court did not commit plain error when it did not provide a cautionary instruction on the prosecutor's statements.

{¶ 61} Next, appellant argues that the trial court erred in allowing E.S. to testify about incidents of sexual misconduct that may have occurred in her bedroom, rather than appellant's. Appellant maintains that E.S.'s testimony was prejudicial and inconsistent with the bill of particulars and the prosecutor's opening statement, which both declared that the sexual misconduct only occurred in appellant's bedroom. It would appear that appellant is asserting a due process challenge, i.e., that he was denied the opportunity to defend himself on the basis of his conduct that occurred outside of his bedroom.

{¶ 62} During her opening statement, the prosecutor stated, "it was a lot of times the same way, and it almost always happened in [appellant's] bedroom." Additionally, in the bill of particulars, Count One stated: "On or about the time period of May, 2010, through August 16, 2011, while both the victim and defendant were in the Defendant's bedroom * * * the Defendant did have sexual contact, to wit: rubbing the victim's buttocks * * *."

{¶ 63} Appellant certainly has a due process right to be informed of the specific charges against him so that he may formulate a proper defense. However, upon review, we find that the omissions in the bill of particulars and the prosecutor's opening statement regarding the sexual misconduct in E.S.'s bedroom did not prejudice his defense and were without constitutional consequences.

{¶ 64} "A bill of particulars is designed to provide the accused, upon proper demand, with greater detail concerning the nature of the offense charged and of the criminal conduct alleged to constitute the offense." *State v. Ray*, 12th Dist. No. CA2009-06-022, 2010-Ohio-2434, ¶ 13. "[A] bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Id.*; *State v. Wilson*, 29 Ohio St.2d 203, 206-207 (1972). However, an accused's right to due process and a fair trial may compel the disclosure of additional known information in a bill of particulars "if the absence of specifics truly prejudices the accused's ability to defend himself." *State v. Sellards*, 17 Ohio St.3d 169, 172 (1985).

{¶ 65} Here, the absence of the added detail that appellant may have touched E.S.'s buttocks in another bedroom in the same home did not truly prejudice his ability to defend himself. What additional defense could appellant have set forth if it was specified that the acts occurred in a second bedroom? Appellant's defense strategy centered on his claim that he never engaged in sexual conduct with E.S., regardless of where, i.e., in which bedroom, the abuse allegedly occurred. Thus, we find that neither the bill of particulars nor the

prosecutor's opening statement surprised, misled, or prevented appellant from preparing for trial. *See State v. Bell*, 112 Ohio App.3d 473, 480 (3d Dist.1996) (failure to specify which room inside a barn the sexual acts occurred was "immaterial to the conduct charged and was unnecessary to any theory of defense alleged by [the defendant]").

{¶ 66} Lastly, appellant claims that he was prejudiced by the admission of E.S.'s testimony that appellant had told her that his buttocks was his "favorite place to be rubbed too," as this statement was not provided to him in discovery.

{¶ 67} The state's failure to provide discovery will not amount to reversible error unless there is a demonstration that the failure to disclose was a willful violation of Crim.R. 16, that prior knowledge of the statement would have benefited the accused in the preparation of his defense, or that the accused was prejudiced by admission of the statement. *State v. Vinson*, 70 Ohio App.3d 391, 399 (12th Dist.1990), citing *State v. Moore*, 40 Ohio St.3d 63, 66, (1988).

{¶ 68} There is nothing in the record below to indicate that the state's failure to disclose appellant's statement was a willful violation of Crim.R. 16, or anything other than a negligent omission on its part. *See State v. Parson*, 6 Ohio St.3d 442, 445 (1983). Secondly, appellant has not demonstrated, or even alleged, how foreknowledge of the undisclosed statement would have benefited him in the preparation of his defense. *Id.* Finally, appellant has not set forth any articulable argument as to how the admission of his statement to E.S. prejudiced him.

{¶ 69} Accordingly, appellant's third assignment of error is overruled.

{¶ 70} Assignment of Error No. 4:

{¶ 71} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 72} In his fourth and final assignment of error, appellant claims that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶ 73} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Roark*, 12th Dist. No. CA2012-04-036, 2013-Ohio-217, ¶ 45, citing *State v. Alkire*, 12th Dist. No. CA2008-09-023, 2009-Ohio-2813, ¶ 51. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Alkire* at ¶ 51.

{¶ 74} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Roark*, 2013-Ohio-217 at ¶ 46.

{¶ 75} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *Id.* at ¶ 47, quoting *State v. Wilson*, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Wilson* at ¶ 35.

{¶ 76} In the case at bar, appellant was charged with gross sexual imposition in violation of R.C. 2907.05(A)(4), which states:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two

or more other persons to have sexual contact when any of the following applies:

* * *

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 78} "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). The trier of fact may infer a purpose of sexual arousal or gratification from the type, nature and circumstances of the contact, along with the personality of the defendant. *State v. Barnes*, 12th Dist. No. CA2010-06-009, 2011-Ohio-5226, ¶ 88. If the trier of fact determines that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved. *Id.*

{¶ 79} First, it is not disputed that E.S. was under the age of 13 during the indictment period. Further, E.S. testified that, on more than one occasion at their home in Lebanon, Ohio, appellant laid her down "face first" on his bed, pulled down her pants and her underwear, and touched her buttocks. E.S. explained that appellant would use both hands to rub her buttocks, and that he would squeeze her buttocks several times.

{¶ 80} Based upon this testimony, there was clearly evidence of sexual contact. Further, we find that the jury could have reasonably inferred that appellant's actions of rubbing and squeezing E.S.'s buttocks were made for the purpose of sexually arousing or gratifying himself.

{¶ 81} Appellant claims, however, that his conviction must be reversed on manifest weight and sufficiency grounds because E.S. did not provide consistent testimony. Appellant

- 19 -

contends that E.S.'s recollection of the rooms in which the sexual contact occurred varied throughout trial, as did her recollection of the number of times the conduct occurred.

{¶ 82} Appellant's assertion does not amount to a finding that the jury clearly lost its way in finding him guilty of the offense charged. E.S.'s testimony, although imprecise at times, was clear in relaying that more than one incident occurred during which appellant laid her down on his bed, removed her underwear, and rubbed her buttocks.

{¶ 83} Appellant also attack's E.S.'s credibility and argues that, for various reasons, E.S. may have fabricated the story to get attention from her family. As evidence of fabrication, appellant cites E.S.'s testimony that she wanted to be a singer, dancer, actress, or someone famous. Appellant also points to E.S.'s testimony that she felt "good" about herself for disclosing the abuse, and that her family told her that she was a "hero." Lastly, appellant directs our attention to E.S.'s testimony describing a time when a television show was taped at her house, and her statements that she did not enjoy the lack of attention being paid to her during filming.

{¶ 84} Although a reviewing court considers the weight of the evidence and the credibility of the witnesses, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," as the trier of fact is in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wells*, 12th Dist. No. CA2005-04-050, 2006-Ohio-874, ¶ 21, quoting *State v. Kash*, 12th Dist. No. CA2002-10-247, 2004-Ohio-415, ¶ 25. We have previously recognized that this is especially true with regard to child victims of sexual abuse. *Wells* at ¶ 21. Additionally, Ohio courts have consistently recognized that the testimony of a victim in sexual assault cases, if believed, is sufficient to prove the elements of sex offenses. *Id.*, citing *State v. Banks*, 71 Ohio App.3d 214 (3d Dist.1991).

{¶ 85} As discussed above, E.S. testified to a series of events, which, if believed, would support a finding that appellant committed gross sexual imposition.  We cannot say that, in believing E.S.'s testimony, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Roark*, 2013-Ohio-217 at ¶ 46.

{¶ 86} Appellant's fourth assignment of error is overruled.

{¶ 87} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.