[Cite as *State v. Byrne*, 2013-Ohio-2966.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                    :

    Plaintiff-Appellee,                        :           CASE NO.   CA2012-09-183

    - vs -                                              :           O P I N I O N
                                                                     7/8/2013
                                                           :

LIAM J. BYRNE,                                    :

    Defendant-Appellant.                  :


CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. CRB1200452


Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for plaintiff-appellee

Wayne Staton, Timothy J. Meloy, 110 North Beech Street, Oxford, Ohio 45056, for defendant-appellant


**RINGLAND, J.**

{¶ 1}   Defendant-appellant, Liam Byrne, appeals his conviction for criminal trespass from the Butler County Area I Court.

{¶ 2}   Byrne was a member of the Sigma Chi fraternity chapter located at Miami University in Oxford.  On April 5, 2012, the national organization of the Sigma Chi fraternity revoked the Miami University chapter's charter.  The Sigma Chi housing corporation hired the

city of Oxford police to be present at the time the announcement was made to the fraternity members, and throughout the period of time that the residents of the house would have to move out.

{¶ 3} Rob Hornback, the vice president of the Sigma Chi housing corporation board at the time, compiled a list of all students who resided at the Sigma Chi house. That list of students, certain fraternity alumnae, and the residents' parents were the only people that the Oxford police were to permit inside the house following the announcement. Fraternity members who lived elsewhere were not to be permitted on the premises. Byrne's name was not on that list.

{¶ 4} On April 6, 2012, in the early morning hours following the night of the announcement, Byrne and several others entered the house. Byrne asserts that he showed the officers his identification and told them that he lived there. The testifying officers who were present that night did not recall Byrne showing them his identification, nor were they sure how Byrne entered the house.

{¶ 5} After approximately two or three hours, Officer Sikora entered the main area of the house where Byrne and others were conversing with Sergeant King and another officer. Officer Sikora, recognizing Byrne, checked the aforementioned list and found that Byrne's name was not present. Officer Sikora made Sergeant King aware of this, at which time Sergeant King informed Byrne that he was not on the list and would have to leave. After Sergeant King let Byrne "vent for several minutes," he escorted him to the exit door.

{¶ 6} Sergeant King heard the exit door open, but then heard someone running up the nearby stairwell. Sergeant King followed the noise and found Byrne on a bed in a second floor room with a blanket over his head. Sergeant King again informed Byrne that he had to leave and again escorted him to the exit door, this time watching to ensure he left. At that point, Sergeant King testified that he saw Byrne continuing to remain on the property outside

the house where he was barking at the dog in the backseat of Sergeant King's cruiser. Sergeant King then arrested Byrne and charged him with criminal trespass.

{¶ 7} Byrne was subsequently convicted of criminal trespass, a misdemeanor of the fourth degree in violation of Oxford Codified Ordinance (OCC) 541.05 on September 14, 2012.

{¶ 8} Byrne now appeals the trial court's decision, raising two assignments of error for our review. Because both assignments of error hinge on whether Byrne had privilege to remain at the Sigma Chi house, we will discuss them together.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED WHEN IT RULED THAT [BYRNE] REMAINED IN THE SIGMA CHI HOUSE WITHOUT HAVING PRIVILEGE TO DO SO.

{¶ 11} Assignment of Error No. 2:

{¶ 12} [BYRNE'S] CONVICTION LACKS SUFFICIENT EVIDENCE AND IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson*, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 14} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Roark*, 12th Dist. No. CA2012-04-036, 2013-Ohio-217, ¶ 46.

{¶ 15} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *Id.* at ¶ 47, quoting *State v. Wilson*, 12th Dist. No. CA2006-01-007, 2007-Ohio-2298, ¶ 35. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Wilson* at ¶ 35.

{¶ 16} In the case at bar, Byrne was charged with criminal trespass in violation of OCC 541.05, which states: "(A) No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another[.]" Privilege is the distinguishing characteristic between unlawful trespass and lawful presence on the land or premises of another. See *State v. Russ*, 12th Dist. No. CA99-07-074, 2000 WL 864989 at *7 (June 26, 2000). Privilege is "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). "Where no privilege exists, entry constitutes trespass." *Russ* at *7, quoting *State v. Lyons*, 18 Ohio St.3d 204, 206 (1985).

{¶ 17} Byrne first argues that he had privilege as he remained a tenant of the premises and therefore had a right to possess and occupy the Sigma Chi house. In turn, the state argues that Byrne had moved out of the house prior to the date in question, and had thus abandoned the property and his right to possess and occupy the house.

{¶ 18} A thorough review of the record indicates conflicting evidence on the issue of abandonment and the refund of dues for room and board for the second semester. Rob Hornback, the aforementioned member of the fraternity's housing corporation board at the time of the incident, testified that Byrne had moved out of the Sigma Chi house, "a month to a month and a half prior to this." He further testified that Byrne was subsequently issued a

refund check for "[r]oom and board. He was given a refund check for that semester."

{¶ 19} In addition, David Paus, a former roommate of Byrne's during the first semester of the relevant school year, testified that Byrne did not live in the house the second semester. Paus stated that he believed that Byrne's "mom took him out because of grades. She didn't want him living in the house." While admitting that Byrne was a tenant of the house at the start of the semester, Paus asserted that Byrne was "definitely out before * * * February."

{¶ 20} Conversely, Byrne alleges that he paid for room and board for an entire year, and did not receive a full refund. He argues that by frequently spending the night at the Sigma Chi house, and by leaving a bed frame, bike, chairs and couches there, he had not abandoned his right to possess and occupy the house. However, Byrne also made numerous statements during his testimony in contradiction of the assertion that he had not abandoned the house. He stated that, "my mom wanted me to move out for grade purposes," so Byrne admitted that he, "moved to a different house" around the "first week of February." Later, while arguing that he had not received a full refund of his room and board, he acknowledged that he hasn't "gotten a full refund yet because * * * I wasn't a member living in the house. They give full refund's [sic] to the people living in the house at the time." Finally, while addressing why he initially refused to leave, Byrne admitted that the Sigma Chi house was not his "home" in stating that he, "didn't want to walk home alone * * *."

{¶ 21} Byrne's testimony in regards to where his "home" was is consistent with the testimony of Officer Sikora, who stated that Byrne told him on the night in question that he lived on Poplar Street, rather than at the Sigma Chi house. Officer Sikora testified that Byrne did not purport to live at the fraternity house, but rather told him "he was staying there with another fraternity member * * *."

{¶ 22} Based on the above testimony, we conclude that the trial court's finding that Byrne was no longer a tenant at the Sigma Chi house on the night in question is supported

by the manifest weight of the evidence. Such a finding distinguishes the present case from *State v. Harper*, 12th Dist. No. CA93-08-066, 1994 WL 81983 (Mar. 14, 1994), wherein this court held that Harper had a possessory interest in the property when the alleged trespass took place on July 18, yet the evidence was undisputed that Harper had paid rent through July 20. In the present case, there was testimony that Byrne had abandoned the property, and that he had been issued a refund of his room and board for the remainder of the semester. While Byrne argues that he was not issued such a refund, we are mindful that the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *State v. Walker*, 12th Dist. No. CA2006-04-085, 2007-Ohio-911, ¶ 26.

{¶ 23} Byrne next argues that he had privilege to be on the property as an invited guest of Paus. In support of this argument, Byrne cites Paus' testimony wherein he responded in the negative to the question of whether he "care[d] that [Byrne] went up to [Paus'] room?" However, Byrne also testified that he told the officers that "I live with [Paus]. [Paus] said he lived with me * * *." That testimony indicated Byrne did not consider himself a guest of Paus, despite his contradictory statements to Officer Sikora that he was staying there with another fraternity member. Furthermore, there was no evidence that Paus invited Byrne to stay at the house, regardless of whether he "didn't care" that he was there.

{¶ 24} Instead, Byrne gave conflicting statements to the officers as to whether he lived at the house or was a guest of another. Pursuant to OCC 544.05(c), "[i]t is no defense to a charge under this section that the offender was authorized to enter or remain on the land or premises involved when such authorization was secured by deception." Deception is defined as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or

other objective or subjective fact." R.C. 2913.01(A). Yet, as the testimony above indicated, Byrne was no longer a tenant of the Sigma Chi house. The testimony also made clear that Byrne was present at the meeting the night the members of the fraternity were told they were no longer allowed on the property unless they were presently living in the house. The trial court was free to consider the credibility of Byrne's contradictory statements in finding that Byrne was aware he was not permitted at the house and was "playing games" with the officers in attempting to remain by whatever means necessary.

{¶ 25} In light of the foregoing, the trial court clearly did not lose its way or create a manifest miscarriage of justice when: (1) officers repeatedly told Byrne that he had to leave the premises and he refused; (2) there was testimony that Byrne had abandoned the property and had been issued a refund for the remaining portion of the year; (3) Byrne initially secured possession of the property by deception in asserting to the officers that he lived there; and (4) Byrne's assertion to the officers that he lived at the house contradicted his statement to another officer that he was there as a guest of another.

{¶ 26} Accordingly, Byrnes' assignments of error are overruled.

{¶ 27} Judgment affirmed.

HENDRICKSON, P.J., and PIPER J., concur.